UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RUSSELL WILLIAMS,<br><br>   Plaintiff,<br><br>   vs.<br><br>LIFE'S RAD, CAFEPRESS.COM<br><br>   Defendants. | Case No: C 10-0086 SBA<br><br>**ORDER GRANTING DEFENDANT CAFEPRESS.COM INC.'S MOTION TO DISMISS AND ORDER REFERRING ACTION FOR SETTLEMENT CONFERENCE**<br><br>Docket 9 |

Plaintiff Russell Williams, acting pro se, commenced the instant action against Defendants Life's Rad and CafePress.com, Inc. ("CafePress") based ostensibly on violations of the Lanham Act, among other claims. The Court has jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1367(a). The parties are presently before the Court on Defendant CafePress's Motion to Dismiss with Prejudice Plaintiff's Second and Third Claims Pursuant to Federal Rule of Civil Procedure 12(b)(6). Docket 9. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

I.   BACKGROUND

   A.   FACTUAL SUMMARY

CafePress is a privately-owned company that provides commercial services enabling users to buy and sell custom-designed merchandise over the internet. Compl. ¶ 9. A person using the CafePress website can upload a design to the site, which CafePress will then print on a t-shirt or other item. Id. ¶ 10. The user can act as a "shopkeeper" and make his or her designs available to others through the user's virtual on-line store. Id. Ex. A. Shopkeepers are required to enter into a Shopkeeper Agreement and comply with the site's Terms of Service

("TOS").  Carr Decl. Exs. A, B.  Plaintiff is a shopkeeper on the CafePress site and owns www.xraygifts.com, which he describes as a gift shop for radiology professionals.  Compl. ¶ 7; 12 and Ex. B.)

On September 1, 2008, Life's Rad, another CafePress shopkeeper, notified CafePress that Plaintiff's use of the term "Life is Rad" to sell his radiology-related apparel infringed its trademark rights in the mark LIFE'S RAD.  Compl. ¶ 12; Carr Decl. Ex. C.  On September 17, 2008, after confirming the existence of Life's Rad's trademark registration, CafePress removed images of Plaintiff's designs containing the statement "Life is Rad" from its site.  Compl. ¶ 18 and Exs. B, D, G.  CafePress undertook such action in accordance with Section 3.3 of the Shopkeeper Agreement, which prohibits the sale of items "that CafePress believes … infringes the rights of a third party, including, without limitation, copyrights [and] trademarks," as well as the terms of the TOS.  Carr Decl. Ex A.  On the same day that CafePress removed Plaintiff's product images from its site, it notified Plaintiff of its actions and encouraged him to contact Life's Rad directly.  Compl. Ex. B.

On November 28, 2009, almost a year after CafePress notified him of its removal of his merchandise, Plaintiff sent two similarly-worded emails to CafePress to dispute Life's Rad's claim that his use of "Life is Rad" infringes upon its LIFE'S RAD mark.  Id. Exs. D, E.  He stated that "Nancy [Carillo, the owner of Life's Rad] is an idiot who thought she could trademark 'Life's Rad' and prevent anyone from using the phrase on any T-shirt."  Id. Ex. E.  On December 2, 2009, Plaintiff sent CafePress another email claiming that his use of "Life is Rad" could "in no way ingringe [sic] upon her crappy 'Life's Rad' logo."  Id. Ex. F.  He demanded that CafePress reinstate his designs on its site.  Id.  On December 3, 2009, CafePress responded to Plaintiff and informed him that it could not restore his "Life is Rad" merchandise, and suggested that he visit the Patent and Trademark Office's website and look up Life's Rad's registration using reference no. 3,326,905.  Id. Ex. G.  Thereafter, Plaintiff sent additional emails to CafePress threatening legal action.  Id. Exs. H, I.  CafePress responded that it had "analyzed the risk associated with [Plaintiff's] designs and will not reinstate them at this time."

Id. Ex. J. CafePress cited its Shopkeeper Agreement and TOS as conferring "sole discretion" upon CafePress to remove a user's content at anytime. Id.

### B. PROCEDURAL HISTORY

On January 10, 2010, Plaintiff filed the instant action against CafePress and Life's Rad, seeking damages and injunctive relief. The Complaint presents three non-denominated "Claims for Relief." First, Plaintiff alleges that Defendant Life's Rad engaged in an unlawful and deceptive business practice by asserting its rights in the LIFE'S RAD trademark. Compl. ¶¶ 79-82. Plaintiff's second claim alleges that CafePress improperly removed his "Life is Rad" merchandise from its site and wrongfully refused to reinstate his designs upon his request. He asserts that such conduct violates the Digital Millennium Copyright Act ("DMCA"), the Lanham Act, his constitutional right to due process and constitutes unfair competition under California's Unfair Competition Law ("UCL"). In his third and final claim, Plaintiff alleges that CafePress's conduct interfered with his business. The Court liberally construes such claim as one under California law for intentional interference with prospective economic advantage. CafePress now moves the Court to dismiss the second and third claims for relief, pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court analyzes each claim, in turn.[1]

## II. LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifca Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. The pleadings must "give the defendant fair notice of what ... the claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

---

[1] On May 3, 2010, Joseph and Nancy Carrillo dba Life's Rad filed their Answer to the Complaint.

When considering a motion to dismiss under Rule 12(b)(6), a court must take the allegations as true and construe them in the light most favorable to plaintiff. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993). Where the plaintiff is pro se, the Court must liberally construe his pleadings. Balistreri, 901 F.2d at 699. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Id. at 1950. Those facts must be sufficient to push the claims "across the line from conceivable to plausible[.]" Id. at 1951 (quoting Twombly, 550 U.S. at 557). If the complaint is dismissed, plaintiff generally should be afforded leave to amend unless it is clear the complaint cannot be saved by amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

### III.   DISCUSSION

#### A.   SECOND CLAIM FOR RELIEF

Plaintiff's second claim for relief alleges that CafePress's decision to remove images of his merchandise from its website and refusal to restore them "is a violation of Copyright law, Trademark law and Plaintiff's due process." Compl. ¶ 87. He also alleges that "Cafepress' [sic] use of nearly identical trademark designs while removing Plaintiff's dissimilar designs is an unfair business practice." Compl. ¶ 95. None of these vaguely-alleged claims states a claim for relief.

##### 1.   Violation of the DMCA

"Congress enacted the DMCA in 1998 to comply with international copyright treaties and to update domestic copyright law for the online world." See Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004). "Title II of the DMCA [also referred to as the Online Copyright Infringement Liability Act] contains a number of measures designed to enlist the cooperation of Internet and other online service providers to combat ongoing copyright infringement." Rossi v. Motion Picture Ass'n of Am., Inc. 391 F.3d 1000, 1003 (9th Cir.

2004). Thus, "when a copyright owner suspects his copyright is being infringed, he must follow the notice and takedown provisions set forth in § 512(c)(3) of the DMCA." Id. These provisions specify that a copyright holder who contends that a website is displaying material in violation of his or her copyright must provide written notification of the infringement to the service provider's agent. 17 U.S.C. § 512(c)(3). Once notice is received, the service provider, to avoid liability, must expeditiously remove or disable access to the material and must notify the affected user promptly. Id. § 512(c)(1)(C).

In response to the removal of his material, the affected user may then submit a "counter-notification," consisting of a statement, under penalty of perjury, that the user has a good faith belief that the material was removed as a result of a mistake or misidentification of the material. See 17 U.S.C. § 512(g)(3). Upon receipt of a counter-notification, the service provider must promptly provide "the person who provided the notification under subsection (c)(1)(C) with a copy of the counter notification, and inform[] that person that it will replace the removed material or cease disabling access to it in 10 business days" unless that person provides with notice that he "has filed an action seeking a court order to restrain the subscriber from engaging in infringing activity relating to the material on the service provider's system or network." Id. § 512(g)(2)(B)-(C).

Plaintiff alleges that CafePress violated the DCMA by failing to comply with its takedown and reinstatement procedures. See Compl. ¶¶ 87, 92. The Court disagrees. By its express terms, the DCMA and its takedown and restore provisions apply only to situations where the material is removed from a website based on notification to the service provider that the material infringes upon a "copyrighted work." 17 U.S.C. § 512(c)(3). In this case, Life's Rad did not notify CafePress that Plaintiff infringed its copyrighted work. Rather, its notice alleged that Plaintiff's material infringed the LIFE'S RAD trademark. Compl. ¶ 16. By its express terms, Title II of the DMCA applies only to copyrights, nor trademarks. See Twelve Inches Around Corp. v. Cisco Sys., Inc., 2009 WL 928077 at *3 (S.D.N.Y., March 12. 2009) (ruling that Title II of the DCMA does not apply in trademark infringement actions). Had

Congress intended to include trademark infringement within the purview of the DCMA, it easily could have done so.[2]

The above notwithstanding, the Court finds that, based on the facts presented, CafePress's actions were legally authorized.  Under Section 3.3 of the Shopkeeper Agreement, CafePress has "absolute discretion" to determine what products may be sold on its side.  Carr Decl. Ex. 1 at § 3.3.[3]  Thus, for example, CafePress has the authority to remove an item that CafePress "believes … infringes the rights of a third party, including, without limitation, copyrights [and] trademarks." Id.  Section 5 of the TOS likewise provides CafePress with the "sole and absolute discretion … to restrict access to or the availability of any material that may be considered objectionable, without any liability to [the user] or any third party." Id. Ex. B at § 5.1.  Here, CafePress received notification that Plaintiff's use of "Life is Rad" may infringe a third party's trademark, and consequently exercised its discretion to remove offending merchandise from its site.  Such action was expressly authorized by the Shopkeeper's Agreement and the TOS, which are binding on Plaintiff.  As such, Plaintiff has failed to state a claim under the DMCA.

### 2. Violation of the Lanham Act

Congress enacted the Lanham Act to codify and unify the common law of unfair competition and trademark protection.  See Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 861 n.2 (1982).  In his Complaint, Plaintiff vaguely alleges that CafePress violated the Lanham Act by removing his products from its website after receiving notification from Life's

---

[2] Even if the DCMA were applicable, Plaintiff's emails to CafePress (which are attached to the Complaint) do not comply with the DCMA's requirements for counter-notifications.  17 U.S.C. § 512(g)(3).

[3] The Shopkeeper's Agreement and TOS are referenced in the Complaint and are integral to Plaintiff's claims.   As such, they may be considered where, as here, plaintiff has raised no objection to their authenticity.  See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (recognizing that the Ninth Circuit has "extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.").

Rad that Plaintiff's designs infringed its trademark rights. Compl. ¶¶ 84-87; Pl.'s Opp'n at 12. This claim fails for at least two reasons.

First, Plaintiff lacks standing. In his opposition, Plaintiff admits that he has no trademark rights in "Life is Rad." Pl.'s Opp'n at 7. Absent such rights, Plaintiff has no standing to assert any claims under the Lanham Act. See Halicki Films, LLC v. Sanderson Sales and Mktg, 547 F.3d 1213, 1226 n.7 (9th Cir. 2008) (party asserting a Lanham Act claim must own or have a cognizable interest in the mark to have standing).

Second, the rights that Plaintiff seeks to assert under the Lanham Act do not exist. Plaintiff has not identified (nor has the Court been able to identify) any provision of the Lanham Act that restricts an internet service provider's discretion to remove items from its website as a result of any third party claim of trademark infringement. While the DMCA imposes obligations upon service providers with respect to copyrights, there is no companion provision under the Lanham Act for trademarks. C.f., Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 721 (9th Cir. 2004) (noting that "[c]opyright and trademark are related but distinct property rights, evidenced by different federal statutes governing their protection").

Finally, as discussed above, CafePress had the contractual authority to remove Plaintiff's merchandise from its site, irrespective of any trademark or copyright concerns expressed by a third party. For all these reasons, Plaintiff has failed to state a claim under the Lanham Act.

### 3. Due Process Violation

"The United States Constitution protects individual rights only from government action, not from private action. Only when the government is responsible for a plaintiff's complaints are individual constitutional rights implicated." Single Moms, Inc. v. Montana Power Co., 331 F.3d 743, 746-47 (9th Cir. 2003). Thus, where the defendant is a private actor, no constitutional claim is cognizable. See Public Utilities Comm'n v. Pollak, 343 U.S. 451, 461(1952) (holding that the Fifth Amendment Due Process Clause "appl[ies] to and restrict[s] only the Federal Government."); Am. Bankers Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 75 F.3d 1401, 1406 (9th Cir.1996) (affirming dismissal fifth amendment claim alleged against

a non-government entity for failure to state a claim). Here, Plaintiff does not dispute that CafePress is alleged to be a private corporation, not a federal entity. See Compl. ¶ 9. Therefore, Plaintiff has failed to state a claim for denial of his constitutional right to due process.

### 4. Unfair Competition Law

The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiff appears to rely on the "unfair" prong of the UCL. See Compl. ¶ 95; Pl.'s Opp'n at 15. An unfair business practice under the UCL is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008); Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1203 (9th Cir. 2001).[4] Alternatively, an act is "unfair" under the UCL "if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could have reasonably avoided." Berryman v. Merit Prop. Mgmt., Inc., 152 Cal.App.4th 1544, 1555 (2006).

Plaintiff avers that CafePress acted unfairly by singling out and removing his designs, while allowing other designs to remain on the site. Pl.'s Opp'n at 15. However, Plaintiff fails to present any facts establishing that CafePress's decision to remove his designs from its site is immoral, unethical, oppressive, unscrupulous, or substantially injurious or that it violates public policy. To the contrary, the facts alleged demonstrate that CafePress properly exercised its authority under the Shopkeeper's Agreement and TOS to remove his merchandise upon notification from another shopkeeper that his designs infringed its copyright. Plaintiff concedes that CafePress has a legitimate business interest in controlling the merchandise

---

[4] In Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163 (1999), the California Supreme Court cautioned against an overly broad interpretation of "unfair" in the context of the UCL, noting that "[v]ague references to 'public policy,' for example, provide little real guidance." Id. at 185. Thus, "where a claim of an unfair act or practice is predicated on public policy, … Cel-Tech … require[s] that the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." Gregory v. Albertson's, Inc., 104 Cal.App.4th 845, 854 (2002).

- 8 -

available through its site to prevent content that potentially infringes the legal rights of others. Not only is such control essential to CafePress's ability right to protect itself against liability for inappropriate content, it also serves to protect the rights and interests of CafePress's users and consumers in general.

Moreover, Plaintiff cannot seriously claim that he suffered any substantial harm as a result of CafePress's decision to remove his Life is Rad designs from products offered for sale through the CafePress site.[5]  It is undisputed by the parties that Plaintiff remains free to market his other (non-"Life is Rad") designs through CafePress service, and that CafePress's removal of his "Life is Rad" apparel does not impair Plaintiff's ability to market his wares through other channels, such as his own websites, www.xraygifts.com and www.lifeisrad.com.  Compl. ¶ 7.  Thus, it is plain from the facts alleged that Plaintiff has not and cannot establish that he suffered a substantial injury.  For all of the foregoing reasons, Plaintiff's claim for unfair competition under the UCL fails as a matter of law.

B.   **INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

Plaintiff's third claim for relief alleges that CafePress interfered with his business when it removed his merchandise from its site.  Compl. ¶¶ 97-99.  Because of Plaintiff's pro se status, the Court liberally construes this claim as a state law cause of action for interference with prospective economic advantage.  The elements of this tort are:

> (1) an economic relationship exists between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1153 (2003).  To satisfy this test, "a plaintiff must plead ... that the defendant's acts are wrongful apart from the interference itself." Id. at 1154.  In addition, the complaint must plead facts demonstrating the existence of

---

[5] CafePress cites the declaration of Candice Carr, Director of Business and Legal Affairs for CafePress, who states that Plaintiff's "Life is Rad" designs never generated any sale on their site.  Carr Decl. ¶ 14.  Because this is a Rule 12(b)(6) motion, the Court cannot consider extrinsic evidence.

a business relationship in which the probability of future economic benefit is more than speculative.  See Roth v. Rhodes, 25 Cal.App.4th 530, 546 (1994).

The Complaint fails to allege any facts necessary to state a claim for intentional interference with prospective economic damage.  Rather, Plaintiff merely repeats the theory underlying his other claims; namely, that CafePress had no right to remove his Life is Rad apparel from its site.  Pl.'s Opp'n at 16.  As discussed above, Plaintiff's claims are frivolous.  Moreover, based on the allegations presented and argument presented in Plaintiff's opposition, it is clear that CafePress's allegedly wrongful acts and interference are the same.  The Court therefore finds that Plaintiff has failed to state a claim for unlawful interference with his business.

## IV. CONCLUSION

The Court concludes that Plaintiff has failed to state any viable claims against CafePress, and that the deficiencies in the Complaint cannot be cured by amendment.  With regard to the remaining claims between Plaintiff and Life's Rad, the parties should make a good faith effort to resolve their dispute without further litigation.  To facilitate the settlement process, the Court will direct Plaintiff and Defendant Life's Rad to participate in an early mandatory settlement conference.  Accordingly,

IT IS HEREBY ORDERED THAT:

1. Defendant CafePress's motion to dismiss is GRANTED.  The second and third claims for Relief are DISMISSED without leave to amend.  CafePress is dismissed as a party-defendant from this action.

2. This matter is referred to Chief Magistrate Judge Maria-Elena James for a mandatory settlement conference to take place within the next sixty (60) days of the date this Order is filed.

3. The Case Management Conference currently scheduled for May 18, 2010 is CONTINUED to **July 21, 2010 at 3:15 p.m.**  The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference that complies with

the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court. Plaintiff shall be responsible for filing the statement as well as for arranging the conference call. All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time. **Plaintiff is warned that the failure to meet and confer with defendant Life's Rad, timely file the joint statement or set up and appear for the Case Management Conference may result in the dismissal of this action under Federal Rule of Civil Procedure 41(b)**.

IT IS SO ORDERED.

Dated: May 11, 2010

                                           _Saundra B Armstrong_
                                           SAUNDRA BROWN ARMSTRONG
                                           United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

WILLIAMS et al,

        Plaintiff,

  v.

CARRILLO et al,

        Defendant.

                                    Case Number: CV10-00086 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 12, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Joseph Carrillo
6912 Maury Drive
San Diego, CA 92119

Nancy Carrillo
6912 Maury Drive
San Diego, CA 92119

Russell Williams
P.O. Box 1112
Pacifica, CA 94044

Dated: May 12, 2010
                                      Richard W. Wieking, Clerk

                                      By: LISA R CLARK, Deputy Clerk